Merle D. VINCENT, Jr., Regional Director of the Third Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee,

v.

STEAMFITTERS LOCAL UNION 395, UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF PLUMBING AND PIPEFITTING INDUSTRY OF UNITED STATES AND CANADA, AFL–CIO, Respondent-Appellant.

No. 85, Docket 26401.

United States Court of Appeals Second Circuit.

Argued Nov. 15, 1960.

Decided March 21, 1961.

Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel; Winthrop A. Johns, Asst. General Counsel, Marvin Roth, Attorney, National Labor Relations Board, Washington, D. C., for petitioner-appellee.

Lipsitz, Green, Fahringer & Fleming, Buffalo, N. Y., for respondent-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

Klenz-Aid, a New York corporation, had contracted to install milk processing machinery in a new milk plant being constructed for the Buffalo Milk Producers Cooperative Association, Inc. (Buffalo) at Cheektowaga, New York. Klenz-Aid contracted with Marshall Maintenance (Marshall), a New Jersey corporation, for Marshall to do heliarc welding required to be performed on stainless steel piping installations.

Marshall, employing two of its own non-union regular employees, commenced work on February 2, 1960. On February 5, 1960, Matthew Crawford, Business Agent of Steamfitters Local Union 395, AFL-CIO, (Union), approached Raymond Katzmar, one of the two Marshall employees and the one who had been acting as supervisor of the two-man job. Crawford discovered that the two employees were non-union and then declared that the milk plant job was "a union job" and the matter would have to be straightened out. Crawford, accompanied by Katzmar, telephoned Richard Marshall, president of Marshall, and insisted that the heliarc welding work be assigned to his union's members under threat of closing down the job if Marshall failed to do so. Later that day, Crawford, in a conversation with Lyman Baker, General Manager of Buffalo, reasserted that he would take action unless his demands were met.

On February 9, 1960, no change having been made in the work assignments, Union established picket lines at two of the entrances to the construction project. Banners were carried proclaiming that Marshall's employees were not members of Union. As a result of the picketing a general work stoppage at the entire project ensued.

On February 10, 1960 Marshall filed a complaint with the National Labor Relations Board, 3rd Region, charging that Union had committed an unfair labor practice by violating Section 8(b) (4) (D) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (D). On February 16 Merle D. Vincent, Regional Director of the NLRB, petitioned the U. S. District Court for the Western District of New York for a temporary injunction pursuant to Section 10(l) of the NLRA, 29 U.S.C.A. § 160(l), ordering Union to cease and desist from its unfair labor practices until the NLRB had finally adjudicated the matter.

A show cause order requiring Union to show why the injunction should not issue was served on Union by personal delivery of the process to Crawford at 9:10 A. M. on February 18. The hearing was scheduled for February 24.

The picketing with banners was discontinued by Union on February 19 in favor of the dissemination of leaflets at the only entrance to the project not then snowbound. The leaflets stated that Marshall was a non-union employer and that Union was publicizing that fact. All the construction workers, except Marshall's employees, continued to remain away from the job and none returned until after the entry of the injunction order on March 4, 1960.

Union answered on February 22, the hearing was held on February 24, and on March 4 the district judge granted the Regional Director's petition. The court found that the Regional Director had reasonable cause to believe that the object of the picketing was to accomplish the reassignment by Marshall of work then assigned to Marshall's regularly employed non-union employees to members of Union. This was held to be a violation of Section 8(b) (4) (D). The Union disagrees with this interpretation of the statute and appeals from the grant of the injunction.

Appellant attacks both Judge Henderson's findings of fact and his conclusions of law. We hold that the judge did not err in either respect.

NLRA § 8(b) (4) (D) provides that it shall be an unfair labor practice for a labor organization or its agents to engage in, or to encourage other individuals to engage in, a strike or work stoppage the object of which is:

"(D) forcing or requiring any employer to assign particular work to *employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class,* unless such employer is failing to conform to an order or certification of the Board determining

the bargaining representative for employees performing such work." (Emphasis supplied.)

Appellant argues that this section makes the proscribed activity an unfair labor practice when there is a jurisdictional dispute between two unions for a single work assignment but that it has no applicability otherwise. A literal reading of the statute does not support so limited an interpretation. Economic coercive activity directed at an employer by a union that seeks work assignments for its members to the exclusion of other workers is the same coercive activity irrespective of whether the employees it seeks to replace are union members or are not union members. And the employer, whom Section 8(b) (4) (D) is designed to protect, is threatened with the same prospective business inactivity. Section 8(b) (4) (D) applies to the dispute here. McLeod v. Building Service Local 32–J, 39 Lab.Cas. ¶66,137 (SDNY Nov. 28, 1959); Schauffler v. Highway Truck Drivers & Helpers, Local 107, D.C. E.D.Pa.1959, 182 F.Supp. 556, vacated as moot, 3 Cir., 1960, 277 F.2d 461. See Hull v. American Wire Weavers' Protective Ass'n, D.C.N.D.Ohio 1957, 159 F. Supp. 425 (dicta). The Labor Board has consistently so applied the Section. See, e. g., Willamette Nat'l Lumber Co., 107 NLRB 1141 (1954); Rothermel Bros., 108 NLRB 712 (1954).

Appellant would have us look at Cuneo v. Local 472, D.C.D.N.J.1959, 175 F.Supp. 131 as persuasive authority. But the two cases are meaningfully distinguishable. There the court found that the union's objective was the organization of non-union workers. Here Union specifically disavowed any intention of organizing Marshall's employees—its desire was to have them displaced. Moreover, we disapprove the broad language in Cuneo, language that would seem to declare Section 8(b) (4) (D) inapplicable in *every* situation where a union by strike or work stoppage seeks to replace non-union employees with union members.

■ Having held the Section applicable to the situation before us we now proceed to the resolution of appellant's contention that there was insufficient evidence to support a finding that reasonable cause existed to believe Section 8 (b) (4) (D) had been violated. The facts presented above were supported by the testimony of Katzmar, Marshall, and Baker. Crawford was the only witness for the appellant. Crawford did not deny that he had had conversations with these three men, but his testimony was that he never insisted to them that his members do the heliarc welding—he merely insisted that his members be given opportunity to qualify to do it. Judge Henderson could observe the demeanor of the witnesses and was in a position to evaluate their credibility. N. L. R. B. v. Jackson Maintenance Corp., 2 Cir., 1960, 283 F.2d 569. We cannot say he was clearly erroneous in choosing to believe Katzmar, Marshall and Baker rather than Crawford, and consequently in finding that reasonable cause existed for believing that Section 8(b) (4) (D) had been violated. Douds v. Milk Drivers and Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534.

■ Finally, appellant maintains that the interference with its peaceful picketing is a violation of its constitutional right to free speech guaranteed by the First Amendment. However, appellant misconstrues the thrust of the injunction order when it characterizes its picketing by banner and by leaflet as peaceful. Here the picketing was not a mere informational exercise. Its clear purpose was to drive two non-union men off the job. The court below had reasonable cause to believe, therefore, that it was an unfair labor practice, and as such not protected by the First Amendment. International Brotherhood of Electrical Workers v. N. L. R. B., 1951, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299.

The order below is affirmed.